Henry SHEMLEY and Louise SHEMLEY *v.*
Jim MONTEZUMA and Lynn STEVENS

CA 83-437

676 S.W.2d 759

Court of Appeals of Arkansas
Division I
Opinion delivered October 10, 1984

*Mickey Buchanan,* for appellant.

*Hawkins & Metzger,* by: *Claude S. Hawkins, Jr.,* for appellee.

MELVIN MAYFIELD, Judge. Appellants appeal from a probate court's denial of their petition to adopt their granddaughter. Jim Montezuma, the girl's natural father, cross-appeals from a chancery court's refusal to give him custody of the child. Both matters were heard by the same judge who consolidated the chancery and probate cases for hearing and entered the same order in both cases. This procedure was followed in *McKee* v. *Bates,* 10 Ark. App. 51, 661 S.W.2d 415 (1983) and *Lindsey* v. *Ketchum,* 10 Ark. App. 128, 661 S.W.2d 453 (1983), and avoids any jurisdictional problem. *Cf. Poe* v. *Case,* 263 Ark. 488, 565 S.W.2d 612 (1978) (probate court held without jurisdiction to award visitation rights in an adoption proceeding.)

Appellants are the maternal grandparents of Mandy, age 3, whose mother and father, Lisa and Jim Montezuma, were separated. Jim was 20 years old at the time of the hearing. He had left his teenage wife when Mandy was about a year and a half old. While hitchhiking to California, he got into some trouble and was serving three months in an Arizona jail when appellants first obtained custody of Mandy. At that time Lisa was living a carefree existence which exposed Mandy to an unsavory side of life involving drugs, sexual promiscuity, and venereal disease.

When released from jail, Jim went on to California, finished his high school education, and is now employed there. It was undisputed that he has never paid any child support. He testified, however, that he called the appellants' home one time and got the impression that he would not be allowed to see Mandy. Lisa filed a written consent to the adoption but Jim opposed it alleging he is now in a position to support Mandy and wants custody of her. The appellants' petition for adoption was denied, but they were allowed to retain custody. Jim was ordered to pay child support and he and his mother were granted visitation rights.

Appellants argue on appeal that the court erred in denying their petition for adoption. The Revised Uniform Adoption Act, Ark. Stat. Ann. § 56-207 (Supp. 1983), provides:

(a) Consent to adoption is not required of:

. . . .

(2) a parent of a child in the custody of another, if the parent for a period of at least one [1] year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.

While the court in this case did find that the father had failed to see the child or support her for over one year, it also found that he was under no court order to support her and that he had unsuccessfully attempted to contact her. Of course, a parent has the obligation to support a minor child independent of order. *Dangelo* v. *Neil,* 10 Ark. App. 119, 661 S.W.2d 448 (1983). See also, Ark. Stat. Ann. § 57-633 (Repl. 1971). The fact that the father's consent is unnecessary, however, does not require that the adoption be granted. The court must find that the adoption is in the best interest of the child. *McKee* v. *Bates, supra.* A probate court's decision regarding a petition for adoption will not be reversed unless it is clearly erroneous (clearly against the preponderance of the evidence) and we must defer to the judge's superior opportunity to assess the credibility of the witnesses. ARCP Rule 52(a); *Henson* v. *Money,* 1 Ark. App. 97, 613 S.W.2d 123 (1981). In the instant case the court must have found that it was not at this time in the child's best interest to grant the adoption. We cannot hold that he was clearly wrong.

On cross-appeal, Jim argues that the chancellor erred in denying him custody of his minor daughter. He acknowledges that the standard for the court to apply is and must be the welfare and best interest of the child. *Digby* v. *Digby,* 263 Ark. 813, 567 S.W.2d 290 (1978). He maintains, however, that when the contest is between the natural parent and the grandparents the law prefers the parent unless incompetent or unfit. *Baker* v. *Durham,* 95 Ark. 355, 129 S.W. 789 (1910), is cited as authority for that

view. That case was more recently cited with approval in *Perkins & Diggs* v. *Perkins,* 266 Ark. 957, 589 S.W.2d 588 (1979).

We are not persuaded that the trial judge should be reversed on the custody issue. It is well settled that the chancellor, in awarding custody of an infant child, must keep in view primarily the welfare of the child, and should confide its custody to the party most suitable therefor. *Kirby* v. *Kirby,* 189 Ark. 937, 75 S.W.2d 817 (1934). We have said that in child custody cases a heavy burden is cast upon the chancellor to utilize to the fullest extent all of his powers of perception in evaluating the witnesses, their testimony and the child's best interest; that we have no such opportunity; and that we know of no case in which the superior position, ability and opportunity of the chancellor to observe the parties carries as great weight as one involving minor children. *Calhoun* v. *Calhoun,* 3 Ark. App. 270, 625 S.W.2d 545 (1981).

Affirmed.

CORBIN and COOPER, JJ., agree.